IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01612-PAB-MEH

ADAM DERITO,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

**ORDER**

---

This matter is before the Court on defendant's Motion to Dismiss Pursuant to
Rule 12(b)(1) and Rule 12(b)(6) [Docket No. 46] filed on May 30, 2019. On June 20,
2019, plaintiff Adam DeRito filed a response. Docket No. 51. Defendant replied on
July 11, 2019. Docket No. 54.

## I. BACKGROUND[1]

Plaintiff Adam DeRito enrolled in the United States Air Force Academy ("the
Academy") in June 2006. Docket No. 37 at 1, ¶ 1. In 2008, plaintiff received two
reprimands during his time at the Academy: one reprimand for "misuse of government
network" and the other for having a bottle of liquor in his room. *Id.* at 1-2, ¶ 3; *id.* at 8,
¶¶ 35-36. In April 2010, plaintiff received non-judicial punishment under Article 15 of

---

[1] In considering defendant's motion to dismiss, the Court assumes the
allegations in plaintiff's amended complaint [Docket No. 37] are true. *Brown v.
Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

the Uniform Code of Military Justice for "fraternization." *Id.* at 2, ¶ 6; at 9, ¶ 38.

Specifically, plaintiff had violated a no-contact order and had an "unprofessional

relationship" with an Academy preparatory school cadet. *Id.* at 9, ¶ 38. Plaintiff denied

these allegations. *Id.*, ¶ 39. Plaintiff then became an informant for the Academy's

Special Investigations Unit in order to mitigate his punishment. *Id.* at 1-2, ¶ 3. In this

role, plaintiff reported incidents "of rule-breaking, sexual assault, and other violations

against other cadets, athletes, and others . . . within the Academy." *Id.* at 2, ¶ 4.

In April 2010, plaintiff received a letter stating that the Academy was initiating

plaintiff's involuntary disenrollment based on the two reprimands. *Id.* at 10, ¶ 44. A

disenrollment hearing was held in May 2010. *Id.*, ¶ 47. In June 2010, plaintiff was

disenrolled from the Academy, was ordered to pay approximately $260,000 for

educational reimbursements, and had his wages garnished. *Id.* at 11, ¶¶ 50-51. As a

result, plaintiff did not receive his bachelor's degree. *Id.*, ¶ 51. Plaintiff filed "two

administrative actions" with the Academy: the first resulted in "a decision . . . without a

hearing on or about May 2013," which "only covered some of the claims made in this

action," and the second, which was filed in June 2017, with an addendum in February

2018, had not yet been ruled on at the time of the filing of plaintiff's amended

complaint. *Id.* at 4, ¶¶ 17-19.[2]

---

[2] In his response to defendant's motion to dismiss, plaintiff attached an "advisory opinion" from a "psychological advisor" from the Air Force Board for Correction of Military Records ("AFBCMR"). Docket No. 51-1. The introductory letter states that the advisory opinion "is not a board decision on [plaintiff's] application," *id.* at 1, but rather that plaintiff's case file was being forwarded to the AFBCMR. *Id.*; *id.* at 2. The AFBCMR psychological advisor found "sufficient evidence to support applicant's request to remove diagnoses of Impulsive Control Disorder NOS and Personality

Plaintiff later enlisted in the Colorado Army National Guard, where he applied to become a warrant officer and to attend flight school. *Id.* at 3, ¶ 10-11; *id.* at 12, ¶ 55. During the screening process, plaintiff was informed that he had adverse medical records in his Academy file. *Id.*, ¶ 56. These records were entered by a person named Henley Price a year after plaintiff left the Academy. *Id.* at 12, ¶ 57.[3] Plaintiff alleges that, at the time, Ms. Price was not a licensed psychologist, *id.*, ¶ 57, and that these medical records were falsified. *Id.* at 13, ¶ 61. Plaintiff claims that these falsified medical records have prevented him from becoming a warrant officer. *Id.*

On June 26, 2018, plaintiff sued defendant[4] [Docket No. 1], and on May 1, 2019, plaintiff filed an amended complaint. Docket No. 37. Plaintiff raises claims of (1) a violation of his procedural and substantive due process rights based on the change made to his medical records, *id.* at 14-15; (2) negligence for allowing the falsified

_____

Disorder NOS assigned post academy from his records[,] as [there was] insufficient evidence in his records to support the assigned diagnoses. *Id.* at 5. The advisor also found "insufficient evidence that [plaintiff] had any mental health conditions that may mitigate his misconduct leading to his disenrollment" from the Academy and "that would support his request for an upgrade to Honorable and a completed degree from the Academy." *Id.* Plaintiff alleges that, to date, his records have not been changed. Docket No. 51 at 1. Defendant argues that citing a new document "is, of course, improper on a motion to dismiss," but also argues that the document "only serves to highlight the misguided nature of this lawsuit." Docket No. 54 at 1. For purposes of ruling on defendant's motion to dismiss, the Court does not consider this document.

[3] Plaintiff alleges that Ms. Price is an agent of the Academy, but does not indicate in what capacity. Docket No. 37 at 16, ¶ 78.

[4] Plaintiff originally named the Academy, Ms. Price, and "John Does 1-50" as defendants. *See* Docket No. 1 at 1. Those defendants filed an Unopposed Motion to Substitute the United States as a Defendant on Plaintiff's Tort Claims [Docket No. 23]. The motion was granted and the United States was substituted in as a defendant and the Academy and Ms. Price were removed from the caption. Docket No. 25.

medical records to be placed in his file, *id.* at 15-17; (3) a violation of his procedural due process rights based on his disenrollment from the Academy, *id.* at 17-18; (4) improper denial of a promotion under the Military Pay Act, 37 U.S.C. § 204, *id.* at 19; and (5) for a declaratory judgment that plaintiff was improperly disenrolled from the the Academy and an order that plaintiff be conferred his bachelor's degree and "corresponding eligibility to be commissioned as an officer in the United States Army." *Id.* at 19-21. Defendant moves to dismiss plaintiff's lawsuit in its entirety. Docket No. 46.

## II. LEGAL STANDARD – RULE 12(b)(1)

Defendant moves to dismiss plaintiff's lawsuit under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When reviewing the factual basis on which subject matter jurisdiction rests, the district court does not presume the truthfulness of the complaint and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d

1000, 1003 (10th Cir. 1995) (citations omitted).  Consideration of evidence outside the pleadings does not convert the motion to a Rule 56 motion.  *Id.*  The proponent of federal jurisdiction bears the burden of establishing that jurisdiction.  *Kunk v. Salazar*, No. 07-cv-01617-PAB-MJW, 2009 WL 3052292, at *2 (D. Colo. Sep. 22, 2009).

## III.  ANALYSIS

Defendant raises many arguments advocating for the dismissal of each of plaintiff's five claims.  Defendant argues that plaintiff's due process claims (Claim 1 and Claim 3) must be dismissed because (1) they are nonjusticiable, Docket No. 46 at 3-4, 12; (2) they are time-barred, *id.* at 8, 13; and (3) they fail to state a claim under Rule 12(b)(6).  *Id.* at 5-8, 12-13.  Defendant contends that plaintiff's negligence claim (Claim 2), which defendant classifies as a defamation claim, must be dismissed because plaintiff did not exhaust his administrative remedies, *id.* at 9, or, in the alternative, because the claim is barred under 28 U.S.C. § 2680(h) and the *Feres* doctrine.[5]  *Id.* at 10-11.  Defendant challenges plaintiff's claim for failure to promote on the basis that the Court lacks jurisdiction over the claim, *id.* at 13, and that it is nonjusticiable.  *Id.* at 14. Finally, defendant argues that the Court lacks jurisdiction over defendant's declaratory judgment claim.  *Id.* at 15.

### A.  Plaintiff's Due Process Claims

---

[5] "In 1946, Congress passed the [Federal Tort Claims Act ("FCTA")], which waived the sovereign immunity of the United States for certain torts committed by federal employees." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  In *Feres v. United States*, 450 U.S. 135 (1950), the Supreme Court held that the FTCA did not waive the government's sovereign immunity for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146.

In his amended complaint, plaintiff asserts two claims raising due process violations: first, he argues that his procedural and substantive due process rights were violated when his medical records were changed, Docket No. 37 at 14-15, and second, he argues that his due process rights[6] were violated when he was disenrolled from the Academy. *Id.* at 17.

### 1. Justiciability

Defendant argues that plaintiff's due process claims should be dismissed because they are nonjusticiable. Specifically, defendant argues that plaintiff improperly seeks judicial intervention into the executive and legislative branches' handling of internal military matters. Docket No. 46 at 5, 12. "The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953).

"Justiciability is a particularly apt inquiry when one seeks review of military activities." *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993). "The Tenth Circuit has recognized that the federal judiciary has a narrow and restricted role with regard to the internal affairs of the military." *Fairbanks v. United States*, 2009 WL 10671681, at *4 (W.D. Okla. Dec. 21, 2009) (citing *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976)). Similarly, the Court of Appeals for the District of Columbia

---

[6] Plaintiff does not specify whether his allegations are based on procedural or substantive due process rights. *See* Docket No. 37 at 17. The Court assumes that plaintiff's claim is based on a procedural due process argument.

has observed that "[t]he Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Kreis v. Sec. of Air Force*, 866 F.2d 1508, 1512 (D.C. Cir. 1989) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)); *see also Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993) (stating that judicial intrusion into military issues "raises a separation of powers issue" because "Congress and the Executive have primary authority and responsibility over matters military").

### a. Plaintiff's medical records

First, plaintiff claims that his due process rights were violated when his military medical records were altered after he was no longer enrolled in the Academy. Docket No. 37 at 14. In response to defendant's argument that this claim is not justiciable, plaintiff argues that "[t]he justiciable question . . . is 'can a citizen challenge the military's decision to re-evaluate and change a prior service member's medical records in a court of law after [he has] left the military and become a civilian?'." Docket No. 51 at 4. Plaintiff contends that he is not asking the court to intervene in internal military matters, but rather is requesting that his medical records be corrected. *Id.*[7]

---

[7] The relief that plaintiff seeks related to this claim is unclear. In his amended complaint, he does not request that the Court issue an order directing defendant to correct his medical records, *see* Docket No. 37, and the declaratory relief requested in his prayer is unrelated to his medical records. *See id.* at 21-22. However, in his response to defendant's motion to dismiss, plaintiff implies that he seeks an order directing defendant to "correct[] . . . his mental health records." Docket No. 51 at 3; *see also id.* at 4 (suggesting that "civilians can challenge, and have changed, aspects of their discharge and medical records").

"There are thousands of routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with." *Murphy*, 993 F.2d at 873 (quotations and alterations omitted). Thus, review of military personnel decisions is limited to situations where "the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure . . . conduct." *Id.* "Courts can review military decisions when the plaintiff argues that the military did not comply with a governing statute or regulation." *Miglionico v. United States*, 108 Fed. Cl. 512, 521 (2012); *see also Lindenau v. Alexander*, 663 F.2d 68, 71 (10th Cir. 1981) ("[A]ctions against military officials for violating their own regulations are reviewable or justiciable."). When reviewing such determinations, "[t]he court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard." *Murphy*, 993 F.2d at 873.

Here, plaintiff has not alleged that defendant violated its own regulations or policies in altering his medical records. In fact, plaintiff claims that the Academy "does not have any public guidelines or procedures dictating when, where and why a cadet['s] medical records may be changed by an individual that has never seen or examined a particular cadet(s)." Docket No. 37 at 14, ¶ 65. Instead, plaintiff argues that his claim related to his medical records is justiciable under 10 U.S.C. § 1558, *see* Docket No. 51 at 4, which provides that "[a] court of the United States may review a recommendation of a special board or an action of the Secretary of the military department concerned on

the report of a special board."  10 U.S.C. § 1558(f)(3).  A "special board" refers to:

> a board that the Secretary of a military department convenes under any
> authority to consider whether to recommend a person for appointment,
> enlistment, reenlistment, assignment, promotion, retention, separation,
> retirement, or transfer to inactive status in a reserve component instead of
> referring the records of that person for consideration by a previously
> convened selection board which considered or should have considered
> that person.

10 U.S.C. § 1558(b)(1)(A).  "Such term includes a board for the correction of military

records [i.e., the AFBCMR] convened under section 1552 of this title, if designated as a

special board by the Secretary concerned."  10 U.S.C. § 1558(b)(1)(B).

This statute does not render plaintiff's claim justiciable.  Plaintiff's complaint

contains no allegation that the decision he challenges was made by a "special board."

*See* Docket No. 37.  Rather, plaintiff alleges that his medical records were changed by

an individual.  *Id.* at 12, ¶ 57.  Plaintiff's lawsuit is not a challenge to an AFBCMR

decision; rather, it is a stand-alone lawsuit challenging the alleged alteration of his

records.  Because plaintiff's lawsuit does not seek review of a special board decision,

he has failed to establish that his due process claim is justiciable under 10 U.S.C.

§ 1558(f)(3).  *See Crumley v. United States*, 122 Fed. Cl. 803, 806 (2015) ("It is

plaintiff's burden to establish subject-matter jurisdiction . . . [h]e must thus show from

the administrative record that the corrections board was convened as a 'special board'

under the statute.").  And because plaintiff has not set forth and standards from "which

the court can measure [defendant's] conduct," *Murphy*, 993 F.2d 873, plaintiff has not

met his burden of demonstrating that his claim is justiciable.  *See Roth v. United States*,

378 F.3d 1371, 1386 (Fed. Cir. 2004) ("We agree with the government that in order for

an officer's claim to the correction of his record to be justiciable, there must exist standards by which a court can review the military decisions at issue."). Accordingly, plaintiff's first due process claim will be dismissed.[8]

## b. Plaintiff's disenrollment

Next, defendant argues that plaintiff's due process claim regarding his disenrollment, *see* Docket No. 37 at 17, must be dismissed as nonjusticiable. Docket No. 46 at 12. In his amended complaint, plaintiff alleges that he was "involuntar[ily] disenrolled and discharged from [the Academy,] and subsequently the United States Air Force, because of arbitrary, capricious, and abusive actions taken on behalf of [the Academy]." Docket No. 37 at 17, ¶ 84.

Whether plaintiff's claim is justiciable turns on the nature of his challenge to his disenrollment. "The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995); *see also Stein v. United States*, 121 Fed. Cl. 248, 277 (2015) ("It is [well] settled that responsibility for determining who is fit or

_____

[8] Plaintiff is currently pursuing an administrative remedy to correct his records under 10 U.S.C. § 1552(a)(1), which provides that "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." *See also* 32 C.F.R. § 865.1 (stating that the "AFBCMR operates within the Office of the Secretary of the Air Force according to 10 U.S.C. [§] 1552."). Plaintiff has not indicated to the Court, and the docket does not reflect, that the administrate proceedings through which plaintiff is currently challenging the alleged alteration of his medical records is complete. If plaintiff is not successful, he may appeal the AFBCMR's decision if his claims are justiciable – i.e., if they challenge the procedures underlying the decision rather than the decision's merits. *Cf. Hanson v. Wyatt*, 552 F.3d 1148 (10th Cir. 2008) (hearing appeal of district court's decision reviewing Army Board for Correction of Military Records ("ABCMR")'s decision).

unfit to serve in the armed services is not a judicial province and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.") (quotation omitted). However, "not every claim arising from a military decision presents a nonjusticiable controversy." *Adkins*, 68 F.3d at 1323. "[A]lthough the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy." *Id.* (emphasis omitted). However, "judicial review is only appropriate where the military's discretion is limited and Congress has established tests and standards against which the court can measure the military's conduct." *Nishitani v. United States*, 42 Fed. Cl. 733, 737-38 (1999); *see also Voge v. United States*, 844 F.2d 776, 780 (1988) ("A controversy is 'justiciable' only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.") (quotation omitted). "Unless such a test or standard is provided, courts must abstain." *Murphy*, 993 F.2d at 873. Thus, the Court must determine whether plaintiff challenges the merits of the disenrollment decision or whether he challenges a particular procedure – and has identified that procedure – followed in effectuating his disenrollment.

In his amended complaint, plaintiff claims that his disenrollment was "based on information gleamed [sic] from an improper investigation, a coerced confession, improper use of past actions, and use of incorrect Falsified Medical Records." Docket No. 37 at 17, ¶ 85. He alleges that his disenrollment was part of a "selective

prosecution" because "other Cadets had committed multiple, pervasive and more serious infractions than [plaintiff], but [were] never subjected to involuntary disenrollment." *Id.* at 17-18, ¶ 86. Finally, plaintiff claims that, "[u]pon information and belief, the involuntary [d]isenrollment proceedings were initiated and completed in violation of [the Academy's] policies." *Id.* at 18, ¶ 87.

The Court finds that plaintiff has not raised a justiciable claim based on his military disenrollment. While plaintiff alleges that his disenrollment "[was] initiated and completed in violation of [the Academy's] policies," *id.*, he does not identify specific policies that the Academy allegedly violated or allege how these violations occurred. *Id.* at 17-18, ¶¶ 83-87.[9] This prevents the Court from evaluating defendant's conduct and renders the claim nonjusticiable. *See Nishitani*, 42 Fed. Cl. at 738 (finding that plaintiff's allegation that the Air Force removed the plaintiff from active duty in violation of Air Force regulations and procedures was not reviewable because "the court [was] without tests and standards to evaluate the Air Force's conduct"); *see also Gavin v. United States*, 47 Fed. Cl. 486, 493 (2000) (dismissing claims for reinstatement and back pay because plaintiff did not allege any specific procedural violation). Insofar as plaintiff alleges that his disenrollment was part of a "selective prosecution" because other cadets were not disciplined for worse behavior, this allegation goes to the merits of plaintiff's disenrollment and is not within the competency of the Court. *Adkins*, 68

_____

[9] Plaintiff alleges that the investigator for his hearing "believed many of the individuals he interviewed made false claims because they were pressured to by high ranking officers at the [Academy]." Docket No. 37 at 11, ¶ 49. Not only is this allegation speculative, plaintiff does not identify any specific policy that such conduct violates.

F.3d at 1322. For these reasons, plaintiff's disenrollment claim will be dismissed as nonjusticiable.

### B. Plaintiff's Negligence Claim

In his amended complaint, plaintiff raises a negligence claim based on the alleged falsification of his medical records. Docket No. 37 at 15-17. Specifically, he alleges that the Academy owes a duty of care to its students, officers, and enlisted personnel, and that its agent, Ms. Price, "owes her patients a duty of care." *Id.* at 16, ¶¶ 74, 76. He alleges that the Academy must ensure that only verifiable health information is placed in students' medical records and that the Academy breached its duty of care when it ordered or allowed that falsified medical records be placed in his file. *Id.*, ¶¶ 77-79. He alleges that Ms. Price breached a duty of care when she allegedly falsified his medical records. *Id.* Defendant argues that, while plaintiff has labeled this claim a negligence claim, it is more properly classified as a defamation claim. Docket No. 46 at 8. Defendant contends that the claim suffers from three jurisdictional defects: (1) plaintiff failed to raise this claim to the Air Force as required by the FTCA; (2) the claim is barred under 28 U.S.C. § 2680(h); and (3) the claim is barred under the *Feres* doctrine. *Id.* at 8-9. Plaintiff responds that, while "[i]t is true that the result of what is at least a negligent diagnosis by the government is defamatory and retaliatory," this does not convert his negligence claim to a defamation claim. Docket No. 51 at 10. Thus, plaintiff argues that his claim may proceed.

Plaintiff is incorrect. The FTCA's waiver of sovereign immunity does not apply to "[a]ny claim arising out of . . . libel[] [or] slander." 28 U.S.C. § 2680(h). This exception

includes claims that, while perhaps classified as another type of claim, sound in libel or slander. *See Hobdy v. United States*, 1992 WL 149871, at *3 (10th Cir. 1992) (unpublished) (negligence claim is "barred by § 2680(h) if [it] arise[s] out of libel and slander."); *see also Sheehan v. United States*, 896 F.2d 1168, 1171 (9th Cir. 1990) ("Regardless of the plaintiff's characterization of the cause of action, § 2680(h) bars suit for claims based on conduct which constitutes one of the excepted torts."); *see also Parker v. United States,* 2011 WL 13189942, at *6 n.4 (D. Ariz. May 6, 2011) ("To the extent that the harm alleged is actually the result of the publication of the OIG Report, which allegedly contained false and misleading information about VBP, the claim is based on libel and is barred by 28 U.S.C. § 2680(h).").

"A written defamatory statement is libel." *McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1125 (D. Colo. 2016); *see also Stump v. Gates*, 777 F. Supp. 808, 825 (D. Colo. 1991) ("The elements of a libel claim are: (1) a written defamatory statement of and concerning the plaintiff; (2) published to a third party; (3) with the publisher's fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special damages or the existence of special damages caused by the publication."). While plaintiff has couched his claim as one that raises an allegation of negligence, the specific allegations therein demonstrate that the claim sounds in libel or defamation. *See* Docket No. 37 at 16, ¶ 78 (alleging that Ms. Price falsified his medical records); *see also Hobdy*, 1992 WL 149871, at *3 (citing *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) ("Libel and slander are the equivalent of defamation.")). As a result, plaintiff's claim is barred by 28 U.S.C. § 2680(h)'s exception

for the waiver of sovereign immunity and will be dismissed.

### C.   Plaintiff's Claim Under the Military Pay Act, 37 U.S.C § 204

Defendant contends that plaintiff's claim for improper denial of promotion under the Military Pay Act must be dismissed because the Court lacks jurisdiction to hear the claim.  Docket No. 46 at 13.  Specifically, defendant asserts that the Tucker Act, 28 U.S.C. § 1491, "vests jurisdiction for non-tort claims against the United States for damages greater than $10,000 in the Court of federal claims."  *Id.*  "Therefore," defendant argues, "the Court of Federal Claims has exclusive jurisdiction over [plaintiff's] claim."  *Id.* at 14.

The Tucker Act provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  While the Tenth Circuit has stated that "[t]he Tucker Act vests exclusive jurisdiction with the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts and seeking amounts greater than $10,000," *Normandy Apartments, Ltd., v. U.S. Dep't of Hous. and Urban Dev*., 554 F.3d 1290, 1295 (10th Cir. 2009) (citation omitted), it has since clarified that the Court of Federal Claims's jurisdiction "is only exclusive over claims which no other federal court has the authority to hear."  *Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127, 1130 (10th Cir. 2011).  "If there is an independent

source of subject-matter jurisdiction over a claim against the United States, and some waiver of sovereign immunity other than the Tucker Act, a plaintiff is free to proceed in district court." *Id.* However, "there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit." *Id.* (citation omitted).

Plaintiff has not set forth a statute other than the Tucker Act that would waive the government's sovereign immunity over his Military Pay Act claim. *See* Docket No. 51 at 12-13. Instead, plaintiff argues that his "claims for back pay and other costs are grounded in his due process and negligence claims which represent an independent source of relief," and because his "claims are tied to the due process and negligence claims," the Court has jurisdiction over this lawsuit. *Id.* at 13. Plaintiff is incorrect. *See Miller v. United States*, 119 Fed. Cl. 717, 729 (2015) ("It is well-settled that . . . due process guarantees are not money-mandating sources of law to support military pay claims.").

The Federal Circuit has "long recognized that the Military Pay Act 'provides for suit in [the Claims Court] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quoting *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004) (alterations in original)); *see also Miller v. United States*, 119 Fed. Cl. 717, 729 (2015) (Federal Claims Court stating that "[c]laims for back pay based on the Military Pay Act are generally considered to be within the jurisdiction of this court."). This jurisdiction applies to claims alleging that back pay is owed due to a denial of a promotion. *See*

*Antonellis*, 723 F.3d at 1332-33.

Because plaintiff has failed to set forth an independent source of the government's waiver of sovereign immunity for suits in the district court, plaintiff has failed to demonstrate that the Court of Federal Claims' jurisdiction is not exclusive and has failed to meet his burden of demonstrating that the Court has jurisdiction over his Military Pay Act claim. *Salazar*, 2009 WL 3052292, at *2.

"A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice." *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006). The Tenth Circuit has "interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Id.*

Section 1631 of Title 28 of the United States Code, however, does not expressly contemplate the transfer of a *claim*. The statute provides that, when a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer *such action* . . . to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. "There is a lack of agreement among the courts about whether a court has authority to transfer certain claims or can only transfer an entire action." *Christopher v. Reaching Fourth Ministries*, 2018 WL 501004, at *6 (S.D. Cal. Jan. 22, 2018) (citing cases and "adher[ing] to the express text of Section 1631 and declin[ing] to sever" certain claims); *but see F.D.I.C. v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996) (approving district court's transfer of

certain claims where it did not have personal jurisdiction over all parties because the district court's order could be "construed as a severance of the claims under Rule 21."). *McGlamery* determined that it was appropriate for the district court to sever certain parties under Rule 21 of the Federal Rules of Civil Procedure – when it did not have personal jurisdiction over those parties – and to transfer the case to a court of competent jurisdiction. *See McGlamery*, 74 F.3d at 222; *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

Regardless of whether the Court can sever plaintiff's Military Pay Act claim and transfer it to the Court of Federal Claims, the Court finds that transfer is not warranted. "Whether to transfer an action or instead to dismiss the action without prejudice is a decision committed to the discretion of the district court." *Murray v. Jewell Cty., Kan.*, No. 11-cv-00596-DME-KMT, 2011 WL 2601528, at *3 (D. Colo. June 30, 2011) (citing *Trujillo*, 465 F.3d at 1222-23). Factors weighing in favor of transfer instead of dismissal include "that the new action would be time barred," that the claims are "likely to have merit," and that "the original action was filed in good faith rather than filed after [the] plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Trujillo*, 465 F.3d at 1223 n.16 (citations omitted).

The Court finds that the second factor – whether the claims are likely to have merit – is dispositive. The Court of Federal Claims has determined that "[m]ilitary promotion decisions are nonjusticiable issues." *Strickland v. United States*, 36 Fed. Cl. 651, 655 (1996). Plaintiff's argument that he is not seeking a promotion, but rather "is

18

only asking . . . [that] the mental health records at issue be corrected which merely makes him eligible for a promotion," Docket No. 51 at 3, does not change this conclusion. First, the Court has already determined that it cannot interfere with internal military personnel decisions. Moreover, in his complaint, plaintiff specifically requests an order "directing [the Academy] to make [him] eligible . . . to be commissioned as an officer in the Colorado Army National Guard." Docket No. 37 at 21, ¶ 3. *See Strickland*, 36 Fed. Cl. at 655 (holding that military-promotion claim is not justiciable because "[t]here are no regulatory tests or standards for the court to determine whether or not plaintiff would have received a promotion to Master Sergeant if his 1990 EPR were either removed from his personnel file or modified as sought."). Because the Court finds that plaintiff's claim is not likely to have merit, in the interest of judicial economy, it will dismiss plaintiff's claim rather than transfer it to the Court of Federal Claims.

### D. Declaratory Judgment Claim

Plaintiff's remaining claim arises under the Declaratory Judgment Act, 28 U.S.C. § 2201. This section provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Defendant argues that plaintiff's declaratory judgment claim must be dismissed for lack of jurisdiction because the Declaratory Judgment Act provides no independent basis for the Court's jurisdiction. Docket No. 46 at 15. Indeed, the Tenth Circuit has determined that "does not confer

jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) (citations omitted). Plaintiff argues that his "declaratory relief claim and request is rooted in all of the substantive and procedural due process claims discussed above," and if he "is successful in these claims[,] then the [C]ourt may grant the declaratory relief requested because it has an independent basis of jurisdiction in the substantive and procedural due process claims." Docket No. 51 at 14. The Court has determined that plaintiff's due process claims are not justiciable and, accordingly, these claims cannot be the independent basis of jurisdiction required by the Declaratory Judgment Act. *See Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004) (stating that "justiciability implicates this court's jurisdiction" and that the court has a duty to determine whether a case presents a justiciable controversy). As a result, plaintiff's declaratory judgment claim will be dismissed for lack of jurisdiction.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that defendant's Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) [Docket No. 46] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are **DISMISSED** without prejudice. It is further

**ORDERED** that, within 14 days of the entry of this order, defendant may have its costs by filing a bill of costs with the Clerk of Court. It is further

**ORDERED** that this case is closed.

DATED March 30, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge